IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01422-PAB-CBS

RICHARD BARON ZEVALKING IV,[1]
    Plaintiff,
v.

CHASE HOME FINANCE,[2]
    Defendant.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

    This civil action comes before the court on Defendant's Motion for Summary Judgment. Pursuant to the Order Referring Case dated June 7, 2012 (Doc. # 8), the Amended Order Referring Case dated July 8, 2013 (Doc. # 45), and the memorandum dated July 8, 2013 (Doc. # 46), this matter was referred to the Magistrate Judge. The court has reviewed the Motion, Mr. Zevalking's Objection (filed on July 8, 2013) (Doc. # 44), Defendant's Reply (filed July 26, 2013) (Doc. # 51), the exhibits, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

    Through counsel, Mr. Zevalking filed the Complaint on March 30, 2012 in the District Court for the City and County of Denver. (*See* Docs. # 1-1, # 3).[3] On May 31, 2012, Defendant

---

    [1] Plaintiff Sharon Gayle Guillory, identified as Sharon Gayle in the Complaint, was dismissed from this action on September 17, 2013, at her request. (*See* Doc. # 53).

    [2] Chase Home Finance LLC was incorrectly identified as Chase Home Finance in the original complaint. On May 1, 2011, and pursuant to the April 27, 2011 State of Delaware Certificate of Merger of Chase Home Finance LLC With and Into JPMorgan Chase Bank, National Association, Chase Home Finance LLC was merged into JPMorgan Chase Bank, National Association, with JPMorgan Chase Bank, National Association being the successor entity. Accordingly, Chase Home Finance LLC no longer exists as a legal entity and the correct party is JPMorgan Chase Bank, N.A. (*See* Declaration of Sherman L. Slade, Exhibit 1 to Defendant's Motion (Doc. # 39-1) at ¶ 7).

    [3] Mr. Zevalking's first lawyer's Motion to Withdraw his appearance was granted on December 19, 2012. (*See* Doc. # 20). New counsel entered his appearance on January 25, 2013. (*See* Doc. # 31). Mr. Zevalking's second lawyer's Motion to Withdraw his appearance

removed the case to the United States District Court for the District of Colorado.  (*See* Notice of Removal (Doc. # 1)).  Mr. Zevalking brings four claims for relief: (1) negligence, (2) deceptive trade practice in violation of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-101 *et seq.*, (3) violation of Colo. Rev. Stat. § 38-40-103, and (4) a request for attorney fees and costs under Colo. Rev. Stat. § 38-40-104.  (*See* Doc. # 3 at 3-4 of 5).  Mr. Zevalking seeks compensatory damages, costs, and attorney fees.  (*See id.* at 3-4 of 5).

II.   Standard of Review

Defendant moves pursuant to Fed. R. Civ. P. 56 for summary judgment on all of Mr. Zevalking's claims.

> According to Federal Rule of Civil Procedure 56, a court should grant summary judgment where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. In pursuing summary judgment, the moving party generally bears the initial burden of showing the absence of a genuine dispute concerning a material fact in the case. However, [w]hen, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.
> Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate specific facts showing that there is a genuine issue for trial. To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case.  However, to be clear, it is not the party opposing summary judgment that has the burden of justifying its claim; the movant must establish the lack of merit.
> Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  A fact is material if, under the relevant substantive law, it is essential to proper disposition of the claim.  An issue is genuine if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.

*Bradley v. Denver Health and Hosp. Authority*, 734 F. Supp. 2d 1186, 1191-92 (D. Colo. 2010) (internal quotation marks and citations omitted).  The court's "role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain h[is] claim."  *Jones v. Barnhart*, 349 F.3d 1260, 1265-66 (10th Cir. 2003) (internal

---

was granted on June 10, 2013.  (*See* Doc. # 42).  Mr. Zevalking is currently proceeding in his *pro se* capacity.

quotation marks and citation omitted). While the court must view the facts in the light most favorable to the plaintiff, *A.B. ex rel. B.S. v. Adams-Arapahoe 28J School District*, 831 F. Supp 2d 1226, 1258 (D. Colo. 2011), nevertheless, a "plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009).

III.   Factual Background

This action arises out of a mortgage loan to borrower Sharon Gayle. On or about September 27, 2006, Sharon Gayle obtained a mortgage loan in the principal amount of $440,000.00 from Washington Mutual Bank, FA. (See Declaration of Sherman L. Slade, Exhibit 1 to Motion (Doc. # 39-1) at ¶ 1). On September 27, 2006, Sharon Gayle signed an Adjustable Rate Note ("the Note") in the principal amount of $440,000.00 in favor of WaMu and its successors and assigns. (*See* Doc. # 39-1; Adjustable Rate Note, Exhibit 1-A to Motion (Doc. # 39-2); Plaintiff's Answer To Defendant JPMorgan Chase Bank, Association's First Set Of Combined Discovery Requests, Exhibit 2 to Motion (Doc. # 39-4) at ¶ 2). As security for the Note, Sharon Gayle signed a Deed of Trust on September 27, 2006 for residential real property located at 451 Acoma St., Unit A, Denver Colorado. (*See* Deed of Trust, Exhibit 1-B to Motion (Doc. # 39-3)). Chase acquired the Note and became the beneficiary of the Deed of Trust on September 25, 2008, when it purchased the assets of WaMu. (*See* Doc. # 39-1 at ¶ 5; Doc. # 39-4 at ¶ 1).[4] The Deed of Trust was recorded with the Clerk and Recorder for the City and County of Denver on October 18, 2006. (*See* Doc. # 39-3 at 2 of 24). Chase is the current holder of the Note and beneficiary of the Deed of Trust. (*See* Doc. # 39-1 at ¶ 6).

Pursuant to the Note, Sharon Gayle contracted to repay the Loan by making monthly payments. (*See* Doc. # 39-2 at ¶ 3(A)). Sharon Gayle defaulted on the Note when she missed

---

[4]   *See also Columbus Investments v. Lewis*, 48 P.3d 1222, 1226 (Colo. 2002) ("The transfer or assignment of a negotiable promissory note carries with it, as an incident, the deed of trust or mortgage upon real estate or chattels that secure its payment."); Doc. # 39-2 at ¶ 1 ("I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder'."); Doc. # 39-3 at § 20 ("The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.")).

thirteen mortgage loan payments. (*See* Doc. # 39-1 at ¶ 8; Deposition of Sharon Gayle, Exhibit 3 to Motion (Doc. # 39-5 at 4 of 6); Doc. # 39-2 at ¶ 7(B) (failure to pay the full amount of each monthly payment on the date it is due constituted default under the Note)). In May of 2011 Chase commenced non-judicial foreclosure proceedings with the Public Trustee for the City and County of Denver (Public Trustee file No. 2011-1573) to foreclose on its security interest in the real property. (*See* Doc. # 39-1 at ¶ 8; Notice of Election and Demand for Sale, Exhibit 4 to Motion (Doc. # 39-6)). Prior to the foreclosure sale, Sharon Gayle made a payment of $51,661.86 to the Public Trustee. (*See* Receipt, Exhibit 8 to Motion (Doc. # 39-10)). After receiving this payment from the Public Trustee, Chase withdrew the foreclosure proceeding. (*See* Withdrawal of Notice of Election and Demand for Sale, Exhibit 9 to Motion (Doc. # 39-11); Doc. # 39-5 at 5 of 6; Doc. # 3 at ¶ 15). The payment from the Public Trustee brought the loan current through November 1, 2011. (*See* Doc. # 39-1 at ¶ 9). The loan remains in default, as no further mortgage payments have been made since the payment from the Public Trustee. (*See* Doc. # 39-1 at ¶ 10; Doc. # 39-5 at 5 of 6). All payments made on the Loan received by Chase have been applied to the Loan pursuant to the Note and the Deed of Trust. (*See* Doc. # 39-1 at ¶ 11).

IV.   Analysis

"Because it involves the court's power to entertain the suit, constitutional standing is a threshold issue in every case before a federal court." *Turner v. McGee*, 681 F.3d 1215, 1218 (10th Cir. 2012). Diversity claims are no exception to the standing requirement. *Hutchinson v. Pfeil*, 211 F.3d 515, 523 (10th Cir. 2000). "To establish Article III standing, a plaintiff must demonstrate that he has satisfied each of three irreducible constitutional elements. *Turner*, 681 F.3d at 1218 (internal quotation marks and citation omitted). "Specifically, the plaintiff must show that: (1) he has suffered an injury in fact; (2) the injury is fairly traceable to the complained-of conduct; and (3) it is likely as opposed to merely speculative that the injury will be redressed by a favorable decision. *Id. See also Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005) ("Constitutional standing requires (1) injury-in-fact, which is an

invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (citation omitted).

It is undisputed that Mr. Zevalking is not a party to the Note or the Deed of Trust. (*See* Doc. # 39-1 at ¶ 4; Doc. # 39-2; Doc. # 39-3). The record, without a doubt, establishes that Mr. Zevalking has never been an owner of the property, that he did not sign the Note, and that he is not a party or signatory to the Deed of Trust. All of the claims in the Complaint are predicated upon Chase's alleged failure to fulfill its contractual obligations under the Note. (*See, e.g.,* Doc. # 3 at ¶ 22 (negligence claim alleging that Chase "owed Plaintiffs a duty to ensure" that Plaintiffs "indeed def[au]lted on their mortgage payments before" initiating the Foreclosure Proceedings and that Chase "breached this duty when it foreclosed on Plaintiffs' property without first ensuring that Plaintiffs has indeed defaulted on their loan [sic]."); ¶ 25 (CCPA claim alleging Chase "engaged in a deceptive trade practice when it refused to ensure that Plaintiffs had timely paid their mortgage before foreclosing on them."); ¶ 31 (claim for violation of Colo. Rev. Stat. § 38-40-103 alleging Chase "did not process a single one of Plaintiffs' payments"); ¶ 32 (claim for violation of Colo. Rev. Stat. § 38-40-103 alleging that "[a]s a result of Chase Home Finance failure to process Plaintiffs' payments, Chase Home Finance initiated a foreclosure against Plaintiffs. . . ."); ¶ 35 (claim for attorney fees and costs under Colo. Rev. Stat. § 38-40-104 alleging Chase "failed to promptly process Plaintiffs' payments and failed to give Plaintiffs credit for the payments they made.").

That Mr. Zevalking may have lived in the property and made some mortgage payments in the past does not confer standing on him to challenge the contract or to recover extra-contract damages for wrongful withholding of benefits to the contracting party, Sharon Gayle. Because Mr. Zevalking is not a party to the Loan Documents and because Chase owes no contractual duties or obligations to him, he lacks the requisite injury-in-fact and does not have standing to assert the claims in the Complaint against Chase. *See Frempong v. National City Bank of Indiana*, No. 10-3950, 452 F. App'x 167, 171 (3d Cir. Nov. 18, 2011) (Mortgagor's husband had

no legally protected interest in mortgaged property with respect to third parties, and thus did not, as a result of bank's foreclosure on property, suffer injury-in-fact required for him to have Article III standing to bring civil rights action in connection with property; husband had never been owner of property, his name did not appear on deed, and he did not co-sign mortgage note); *Thomas v. Guild Mortg. Co.*, 2011 WL 676902, at *4 (D. Ariz. Feb. 23, 2011) ("A homeowner who is not a party to a mortgage loan cannot assert TILA, RESPA, Home Ownership and Equity Protection Act, or fraud claims against a lender for improper disclosures."); *Cleveland v. Deutsche Bank Nat. Trust Co.*, No. 08cv0802 JM(NLS), 2009 WL 250017, *2 (S.D. Cal. Feb.2, 2009) (dismissing husband's claims against a lender for "violation of TILA, injunctive relief, statutory damages, fraud, accounting, cancellation of instruments, quiet title, and declaratory relief" on a loan procured by his wife because "someone who is not a party to [a] contract has no standing to enforce the contract or to recover extra-contract damages for wrongful withholding of benefits to the contracting party"); *In re Collado*, 2010 WL 3282595, *2 (Bankr. S.D. Fla. Aug. 13, 2010) (holding a plaintiff who obtained ownership of property by way of quit claim deed lacked standing to assert claims to reform lender's promissory note and fraud because "Plaintiff was not and is not a party to the loan").

As to the First Cause of Action alleging negligence, "[t]he elements of a negligence claim consist of the existence of a legal duty by the defendant to the plaintiff, breach of that duty by the defendant, injury to the plaintiff, and a sufficient causal relationship between the defendant's breach and the plaintiff's injuries." *Connes v. Molalla Transport System, Inc.*, 831 P.2d 1316, 1320 (Colo. 1992) (citations omitted). *See also Silva v. Wilcox*, 223 P.3d 127, 135 (Colo. App. 2009) ("To establish a common law negligence claim, the plaintiff must show that the defendant owed the plaintiff a legal duty to conform to a standard of care, the defendant breached that duty, the plaintiff suffered injury, and there is a causal relationship between the breach and the injury.") (citation omitted).

In order for liability to attach on a theory of negligence, the parties must have a relationship recognized by law as providing the foundation for a duty to prevent an injury. "The initial question in any negligence action, therefore, is whether the defendant owed a legal duty

to protect the plaintiff against injury. *Connes*, 831 P.2d at 1320 (citations omitted). "A negligence claim will fail if it is predicated on circumstances for which the law imposes no duty of care upon the defendant." *Id.* The issue of legal duty is a question of law to be determined by the court." *Id.*

Mr. Zevalking has not alleged or demonstrated any legally recognizable duty owed to him by Chase "to ensure that [Plaintiffs] had indeed defaulted on their mortgage payments" and/or "their loan" before it foreclosed on the property. (*See* Doc. # 3 at ¶ 22). The allegations in the Complaint merely state a debtor and creditor relationship that relates "only to activities taken in the course of a normal lender-borrower relationship" and does not create a duty of care. *Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 523 (Colo. App. 2006). "In the absence of special circumstances" not present here, "the legal relationship between a lending institution and its customer is that of debtor and creditor." *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1365 (Colo. App. 1994). As Mr. Zevalking has not alleged or established any legal duty Chase owed to him, his negligence claim must fail. *See Ryder v. Mitchell*, 54 P.3d 885, 889 (Colo. 2002) (citation omitted) ("If a negligence action is based on facts that do not impose a duty of care upon a defendant for a plaintiff's benefit, the claim will fail.").[5]

Mr. Zevalking's First Cause of Action would also be barred by the economic loss rule. "The economic loss rule serves to maintain a distinction between a tort obligation and a contract obligation." *Knowles v. Bank of America, N.A.*, Case No. 12–cv–00621–RBJ, 2012 WL 5882570, *2 (D. Colo. Nov. 21, 2012) (internal quotation marks and citation omitted). *See also Engeman Enterprises, LLC v. Tolin Mechanical Systems Co.*, --- P.3d ----, No. 12CA0450, 2013 WL 979508, at * 2 (Colo. App. March 14, 2013) ("The economic loss rule maintain[s] the boundary between contract law and tort law.") (internal quotation marks and citations omitted). "Under the economic loss rule, a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Knowles*, 2012 WL 5882570 at * 2 (internal quotation

---

[5] Nor do the allegations in the Complaint set forth the other elements of a negligence claim, such as injury and a causal relationship between the injury and the alleged breach of a legal duty. *Connes*, 831 P.2d at 1320 (citations omitted).

marks and citation omitted). *See also Jardel Enterprises, Inc. v. Triconsultants, Inc.*, 770 P.2d 1201, 1303 (Colo. App. 1988) ("no cause of action lies in tort when purely economic damage is caused by negligent breach of a contractual duty"). "The key to determining the availability of a contract or tort action lies in determining the source of the duty that forms the basis of the action." *Knowles*, 2012 WL 5882570 at * 2 (internal quotation marks and citation omitted). Here, the wrongful actions alleged by Mr. Zevalking arise from the contract between Sharon Gayle and Chase. The only relationship between Chase and Sharon Gayle is contractual in nature and the alleged wrongful conduct by Chase arises out of the Note and Deed of Trust. Mr. Zevalking does not allege a separate duty imposed by tort law that Chase breached.

As to the Second Cause of Action alleging violation of the CCPA by "refusing to ensure that Plaintiffs had timely paid their mortgage before foreclosing on them" (*see* Doc. # 3 at ¶ 25), the CCPA "was enacted to regulate commercial activities and practices which, because of their nature, may prove injurious, offensive, or dangerous to the public." *Dalton v. Countrywide Home Loans, Inc.*, 828 F. Supp. 2d 1242, 1250 (Dec. 1, 2011) (internal quotation marks and citation omitted). "To prove a private cause of action under the CCPA, a plaintiff must show: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business . . . ; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Sierra v. Stonebridge Life Ins. Co.*, No. 10-cv-03123-PAB-KMT, 2013 WL 5323083, at * 5 (D. Colo. Sept. 23, 2013) (internal quotation marks and citation omitted). If all elements of a CCPA claim are not met, the claim fails as a matter of law. *Id.* (citation omitted).

With respect to the third element, Chase argues in its Motion that Mr. Zevalking cannot support his CCPA claim because he cannot show that the alleged deceptive trade practice had a significant public impact. *See Brodeur v. American Home Assur. Co.*, 169 P.3d 139, 155 (Colo. 2007) ("if a wrong is private in nature and does not affect the public, a claim is not actionable under the CCPA."); *Cavitat Medical Technologies, Inc. v. Aetna, Inc.*, Case No. 04-CV-01849-MSK-OES, 2006 WL 218018, *3 (D. Colo. Jan. 27, 2006) ("If alleged deceptive

trade practices occur only within the context of a private agreement and do not impact the public, then the CCPA provides no remedy."). "Considerations relevant to whether a challenged practice significantly impacts the public include: (1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Sierra*, 2013 WL 5323083, at * 5.

In response to Chase's Motion, Mr. Zevalking does not address whether Chase's alleged deceptive trade practice had a significant public impact. Mr. Zevalking's burden in responding to Chase's Motion is to designate specific facts demonstrating a genuine issue of fact for trial with respect to his claims.

> For dispositive issues on which the plaintiff will bear the burden of proof at trial, he must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment. [E]vidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.

*Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007) (internal quotation marks and citations omitted). Mr. Zevalking provides no evidence showing that Chase's alleged deceptive trade practice had a significant public impact, such as the number of consumers affected by Chase's alleged deceptive trade practice, the relative bargaining power of these consumers, or how the challenged practice has the potential to impact a significant number of customers in the future. Mr. Zevalking's CCPA claim involves only Chase's alleged misconduct with Sharon Gayle's private loan. Mr. Zevalking has not alleged or demonstrated that Chase's alleged misconduct with respect to a single loan with one borrower affected or had the potential to affect a significant number of consumers to meet the significant public impact requirement. *See Alpine Bank v. Hubbell*, 555 F.3d 1097, 1113 (10th Cir. 2009) (affirming summary judgement on CCPA claim as "the record includes no evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future.") (internal quotation marks and citation omitted). As Mr. Zevalking fails to present any evidence in support of the significant public impact element, Chase is entitled to summary judgment on the Second Cause of Action.

With respect to the Third and Fourth Claims for Relief, Section 38-40-104(1) provides a private cause of action for certain "debtors" and "borrowers" who have been "aggrieved by a violation" of Section 38-40-103.[6]  The servicer of a mortgage loan is required to "respond in writing within twenty days from the receipt of a written request from the debtor . . . for information concerning the debtor's loan, which is readily available to the servicer from its books and records . . . ." Colo. Rev. Stat. § 38–40–103(2).  A debtor aggrieved by a violation of § 38–40–103 may bring an action for actual damages and statutory damages of $1,000.00, plus reasonable attorney fees and costs, if the "violation is not remedied in a reasonable, timely and good faith manner by the party obligated to do so, and after a good faith effort to resolve the dispute is made by the debtor." Colo. Rev. Stat. § 38–40–104(1).  It is undisputed that Mr. Zevalking is not a "debtor" or "borrower" with respect to the property at 451 Acoma St.  Thus, Mr. Zevalking has no standing to assert his Third and Fourth Causes of Action.

Further, Colo. Rev. Stat. § 38-40-103 only applies to servicers "who regularly engage[ ] in the collection of payments on mortgages and deeds of trust for owners of evidences of debt secured by mortgages or deeds of trust."  Chase is the owner of the evidence of debt secured by the Deed of Trust and is not a servicer collecting payments for another owner.  Colo. Rev. Stat. § 38-40-103(1)(A)(I) is thus inapplicable here.

V.   Conclusion

Because Mr. Zevalking is not a party to the Note or the Deed of Trust and each of the claims in the Complaint is predicated on an alleged failure of Chase to fulfill its contractual obligations under the Note, he lacks standing to pursue any of the claims for relief in the Complaint.  The First Cause of Action also fails as barred by the economic loss rule, the Second Cause of Action fails for lack of any evidence in support of the significant public impact element, and the Third and Fourth Causes of Action fail because Colo. Rev. Stat. § 38-40-103 only

---

[6]   Colo. Rev. Stat. § 38-40-103 merely sets forth the various disclosure and other obligations of mortgage servicers to debtors or borrowers. Alleged violations of these obligations are enforced through the private cause of action set forth in C.R.S. § 38-40-104(1).

applies to servicers and not to Chase, the owner of the evidence of debt secured by the Deed of Trust.  In sum, Chase is entitled to summary judgment on all of the Causes of Action in the Complaint.  Accordingly,

IT IS RECOMMENDED that Defendant's Motion for Summary Judgment (filed June 4, 2013) (Doc. # 39) be GRANTED and that summary judgment enter on the Complaint in favor of Defendant and against Plaintiff.

**Advisement to the Parties**

Within **fourteen days** after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  In re Griego, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for de novo review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar de novo review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  See Vega v. Suthers, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  Ayala v. United States, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). But see, Morales-Fernandez v. INS, 418 F.3d

1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 2nd day of October, 2013.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge